BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE: AUTO BODY SHOP ANTITRUST LITIGATION | : : : : | MDL NO. 2557 |

PRICE'S COLLISION CENTER'S RESPONSE
IN OPPOSITION TO MOTION TO TRANSFER

For almost two years, Defendant Progressive Hawaii Insurance Company ("Progressive") has objected to producing basic, foundational discovery in the *Price's Collision Center v. Progressive* case ("Price's Case") pending in the United States District Court for the Middle District of Tennessee, Case No. 3:12-873. Now, despite the Clerk of the Panel ruling that the Price's Case is **_not_** appropriate for transfer into the Auto Body Shop Antitrust Litigation MDL (*see* Docket No. 218), Progressive filed the instant Motion to Transfer. Given the obvious inappropriateness of the Price's Case joining this MDL, one can only assume this is yet another attempt by Progressive to avoid its discovery obligations and delay a potentially embarrassing trial in the Middle District of Tennessee.[1]

As discussed below, in seeking a transfer of the Price's Case into this MDL, Progressive's Motion mischaracterizes the status and nature of the Price's Case. Indeed, an accurate understanding of the allegations in the Price's Case combined with even a cursory review of the other cases consolidated in this MDL demonstrates that those cases are all very different from the Price's Case in terms of form, nature, and substance. The Clerk's initial

---

[1] Through the course of the Price's Case, Progressive counsel has claimed Progressive does not steer, and Plaintiff's efforts to discover Progressive's steering through reasonable and carefully calculated discovery requests were nothing more than a "fishing expedition." Progressive's representations are belied by the Affidavit of David Edwards, a former Progressive employee who confirms that Progressive does steer customers from Price's Collision Center, partially based on personal vindictiveness. (See Attached **Exhibit A**).

1

determination that the Price's Case is not suitable for transfer into this MDL was correct. Through this Response in Opposition, Price's Collision Center ("PCC") thus respectfully urges the Panel to confirm the Clerk's finding that this case is not appropriate for transfer to the MDL by denying Progressive's Motion.

## BACKGROUND

Below, PCC provides a fairly thorough background of the Price's Case to date in order to underscore the considerable factual distinctions between the Price's Case and those in the MDL, and also to emphasize that a significant amount of work has already been put into the Price's Case. It would be a considerable disservice to the interests of justice and to judicial economy to put the Price's Case into this MDL.

PCC filed the Price's Case Complaint in state court in Williamson County, Tennessee on July 27, 2012. The Complaint plainly shows that this case is a dispute involving one insurance company, Progressive, and one chain of body shops, owned by Bobby Price. Citing a couple of specific insured – Anne Crockett and Nicole Crosby – as examples, the Complaint alleges that Progressive employees in Tennessee use improper means to discourage Progressive insured and claimants in Tennessee from using PCC because PCC does quality work that may cost more than Progressive wishes to pay, and because Progressive's employees simply do not like PCC. Unlike the MDL cases here, there are no allegations of a conspiracy amongst insurance companies and no antitrust claims, and there are no allegations that Progressive uses a Direct Repair Program ("DRP") membership to leverage concessions from PCC. In fact, PCC is not even in Progressive's DRP.

Following removal to the Middle District of Tennessee, Progressive filed a Rule 12(b)(6) Motion to Dismiss on September 4, 2012, arguing that PCC had failed to state a claim under any

of the three state causes of action pled in the Complaint: breach of contract, tortious interference with actual and prospective business relations, and violations of the Tennessee Consumer Protection Act.

There were no initial efforts to stay discovery during the pendency of the Motion to Dismiss, and PCC attempted to begin discovery *almost two years ago*, serving its first set of Interrogatories and Requests for Production on December 7, 2012. It became clear immediately that Progressive had no interest in cooperation in discovery. In fact, Progressive, in the midst of a sea of objections to these basic initial discovery requests, took the completely unsupportable position that the only materials relevant for production in the Price's Case were documents related to the Crockett and Crosby accidents, and thus Progressive only provided documents related to those accidents.

Convinced there was no way Progressive could be brought to cooperate in discovery while its Motion to Dismiss was pending, PCC suggested staying the Price's Case pending a decision on that motion, a suggestion to which Progressive agreed. On October 28, 2013, U.S District Judge Kevin H. Sharp denied the Motion to Dismiss in part, allowing PCC's tortious interference and breach of contract claims to proceed. Judge Sharp's decision made it clear that discovery into Progressive's steering practices *vis-à-vis* PCC was entirely appropriate.

With the Motion to Dismiss resolved and the stay lifted, PCC continued its dogged effort to extract relevant documents from Progressive. After Progressive all but ignored PCC's correspondence reminding Progressive of its discovery obligations, PCC filed its Motion to Compel on March 26, 2014.

Through its Motion to Compel, PCC primarily seeks Progressive communications about PCC. PCC wants to discover those times that Progressive decision makers, adjusters, and claim

representatives discussed PCC either internally or with Progressive insured and claimants. Contrary to Progressive's claim that "Price's Collision has demanded the mining of Progressive's Electronically Stored Information ("ESI") on a state-wide level in Tennessee," and PCC "is pursuing wide-ranging discovery more proportionate to a multi-party, multi-claim litigation," (Progressive Memo. at 3), PCC's Motion to Compel ultimately seeks two specific categories of communications: (1) Progressive's internal communications regarding PCC (assumed to be contained largely in e-mail) and (2) Progressive's communication with insured or claimants regarding PCC, which are generally contained in material called "Face Sheet Notes." While PCC views this material as foundational discovery that should be readily available to a large, sophisticated enterprise like Progressive, counsel for Progressive has asserted that it is too burdensome and expensive to produce this material.

Since the filing of this Motion to Compel, the parties have had *five* lengthy conferences before the U.S. Magistrate Judge Juliet Griffin to discuss this motion. The parties have also had numerous internal discussions via e-mail and phone on the issues raised by the motion. These conferences have been fruitful. Progressive has identified five custodians with responsive documents and was ordered by the Magistrate Judge to produce the "active source" (more readily accessible) emails from those custodial files that mention or reference PCC.[2]

---

[2] Specifically, Magistrate Judge Griffin, by Order dated August 11, 2014, ordered Progressive to produce any (non-privileged) e-mail from the active custodial files for five Progressive employees that "mention[ed] or referenc[ed]" PCC by September 29, 2014. On October 3, 2014, PCC received by mail a CD from Progressive with one e-mail and about 80 pages of material arguably responsive to other discovery requests. During the follow up status conference on October 6, 2014, it became clear that Progressive simply had not followed the court's Order to produce any correspondence in these five custodial files mentioning or referencing PCC. The court ordered Progressive to go back and produce what it was initially ordered to produce by October 14, 2014, and Progressive produced about 200 pages of e-mails on that date. At the October 21, 2014 conference, Magistrate Judge Griffin made further orders on discovery, including that Progressive gather the active source e-mail for three additional custodians.

As to the "inactive source" (less accessible) emails on the "backup tapes" from these custodial files, the Parties continue to work with each other and the Court to get reasonable estimates for tape restoration. The issue of how many custodians Progressive should ultimately have to produce emails for and the issue of how to most effectively search the "Face Sheet Notes" for mentions and references to PCC are ongoing subjects of rather vigorous debate between the Parties and before the Court. The Parties have the benefit of an exceptional jurist in Magistrate Judge Griffin who is particularly exacting and thorough with the parties in her discussion and engagement on these issues.

Progressive is flat wrong when it says "the parties have exchanged limited discovery" in the Price's Case. (Progressive Memo at 3). Progressive has served three rounds of discovery on PCC, and PCC has produced *8110 pages of documents*, in addition to Interrogatory responses. *There are no outstanding requests from Progressive for additional documents.* Progressive, while presently still refusing to turn over certain emails and a large quantity of Face Sheet Notes and only engaging in this discovery pursuant to the Motion to Compel and Court direction, has produced almost 5000 pages of documents, including limited emails, and Face Sheet Notes for a few hundred claimants specifically identified by PCC, as well as training materials, manuals, and other guidance materials. While the parties would be even further along if Progressive were less obstinate in producing foundational discovery in the Price's Case, significant progress has been made and the Court in the Middle District of Tennessee is deeply invested in helping the parties through the remaining issues.

The parties have also reached agreement on the terms of an initial Rule 30(b)(6) deposition for PCC, and PCC offered a date certain for that deposition. Progressive stated it was unavailable that date but would offer other dates. Further, PCC intends to take several

depositions once Progressive completes its obligations in discovery with regard to document production, which again, has been and remains the subject of significant and productive discussion with the Magistrate Judge.

## ANALYSIS

Transfer of the Price's Case into the MDL is not called for under the Section 1407 test, and, as the Clerk indicated in summarily rejecting Progressive's Notice of Potential Tag-Along Action, the case is not even close.

### A.     Common Questions of Fact Are Lacking

Section 1407(a) states that an action may be transferred for consolidated pre-trial proceedings if it shares "one or more common questions of fact" with other cases bound for the MDL. While, on at least a theoretical level, a "common question of fact" could be found between any two cases, there is no relevant commonality between the cases in the MDL and the Price's Case that would warrant transfer of the Price's Case for consolidated pre-trial proceedings with the other cases in this MDL.

In its Transfer Order (Docket No. 167), the Panel stated this MDL involves allegations of a "conspiracy in the automobile insurance industry to suppress the reimbursement rates for automobile collision repairs, in violation of Section 1 of the Sherman Antitrust Act and various state laws," and that this MDL "involves allegations of a complex anticompetitive conspiracy among the nation's leading insurance carriers and dozens of regional companies, as well as allegations that the databases of three third-party information services companies . . . played a substantial role in facilitating the alleged scheme." (Docket No. 167 at 1-3.) While the Panel recognized some factual differences between the individual cases, it noted there was a "common

factual core" of "questions relating to the allegation of an industry-wide conspiracy spearheaded by State Farm" amongst the cases in the MDL. (*Id.* at 3.)

With that description in place, Progressive's Motion to Transfer is highly misplaced. The Price's Case is not a conspiracy case and it is not an antitrust case. It has no allegations related to State Farm. Indeed, there are a litany of major, fundamental distinctions between the cases in the MDL and the Price's Case:

- There are no Sherman Act claims in the Price's Case, unlike the cases in the MDL. In fact, in the Price's Case, all claims arise under Tennessee state law. It is simply misplaced that Progressive moves to transfer this non-antitrust case into the "Auto Body Shop <u>Antitrust</u> Litigation."

- There are no allegations of conspiracy amongst insurance companies in the Price's Case, unlike the MDL, where a conspiracy is at the heart of the allegations.[3]

- A key issue in the MDL is State Farm's market dominance and ability to exert pressure on repair shops and other insurance companies. That issue has no connection to the Price's Case.

- PCC is not in Progressive's DRP, meaning that relationship is not an issue in the Price's Case; the DRP relationship between insurance companies (primarily State

---

[3] There are many inaccurate statements in Progressive's Memorandum, but one of the most divorced from reality is that PCC "is seeking discovery to support its theory that Progressive conspires with other insurers as part of a plan to 'steer' customers to its preferred shops." (Progressive Memo. at 3.) This is simply made up. PCC does not presently have a claim that Progressive conspires with any insurance company to steer business from PCC. As far as PCC knows, Progressive steers completely on its own. In discovery, PCC requested that Progressive produce correspondence between Progressive and other insurance companies in which Progressive might be speaking ill of PCC, as a way to develop its argument that Progressive disfavors PCC. That said, Progressive objected to that request and that category of documents has not been a focus of the later rounds of Motion to Compel discussion. As indicated above, the focus in discovery now is on getting documents mentioning PCC from the custodial files of certain Progressive employees and the Face Sheet Notes.

7

Farm) and the body shops is at the core of the cases in the MDL.

- The Price's Case has nothing to do with the 1963 Consent Decree, which is another key element of the MDL cases.

- The Price's Case involves conduct affecting one chain of body shops (in fact 4 total locations), all in Tennessee, and one insurance company operating in Tennessee. This is in stark contrast to the MDL, which involves conduct that occurs throughout the country involving dozens of body shops and insurance companies.

- The cases in the MDL appear to be in their infancy; the Price's Case is, as explained throughout, far along, with a combined 13000 pages of documents produced on both sides, a Motion to Dismiss well in the rearview mirror, and a hopefully expeditious round of depositions in the offing before the case heads to trial.[4]

The context of the Price's Case and the conduct at issue in that case is completely distinct from that at issue in this MDL. Simply put, there is not remotely sufficient commonality between these matters to justify inclusion of the Price's Case in this MDL.[5]

---

[4] Progressive says "there is no Case Management Order in effect" in the Price's Case. (Progressive Memo at 3.) Again, that is just wrong. There have been two Case Management Orders entered in the Price's Case. The Parties have agreed amongst themselves and informally with the Court that the dates in the December 18, 2013 Amended Case Management Order will need to be adjusted once the discovery issues raised by the Motion to Compel are resolved. But any suggestion by Progressive that there is no CMO in effect because the case is not far along is misplaced. Similarly, Progressive's citation to the *Ford Fusion* and *Cuisinart* cases for the proposition that consolidation may be warranted when the "litigation is in its early stages" is highly misplaced. (Progressive Memo. at 8.) The Price's Case is not in its "early stages." It is close to two-and-a-half years old, deep into document discovery, and its development has only been slowed by Progressive's refusal to willingly engage in discovery, which required court intervention.

[5] Among the army of red herrings contained in Progressive's brief is the repeated allusion to the *Brewer* case, which was filed in the Western District of Tennessee before it was moved into the MDL. Progressive says that "the inclusion of the *Brewer* action in the MDL will likely necessitate discovery specific to Tennessee like that sought in Price's." (Progressive Memo. at

Progressive has found no case law justifying transfer of such an incongruous case into this MDL. Indeed, the case law to which Progressive cites in this section of its Brief is not compelling at all. It cites two antitrust cases – *Sugar Industries* and *Compensation of Professional and Technical Employees* – in support of its claim that the propriety of transfer is heightened because Progressive is a defendant in the Price's Case and in most of the cases in the MDL. (Progressive Memo. at 6.) These cases obviously do not suggest that MDL consolidation is appropriate for all cases in which a corporate party is a defendant, and the lack of factual commonality between the allegations in the Price's Case and the cases in the MDL is such that transfer is plainly not warranted. Likewise, while *Amazon* and *Brent Crude Oil* stand for the natural proposition that there does not need to be complete factual overlap to justify transfer, these decisions certainly do not suggest that cases that involve fundamentally different issues should all be lumped into an MDL.[6]

---

2.) Using *Brewer* as support for transfer of the Price's Case does not work. *Brewer*'s allegations are essentially identical to the other massive cases moved into the MDL; it is a conspiracy case with a Sherman Act claim focused primarily on State Farm's conduct with regard to its DRP participants. The fact that *Brewer* was initially filed in Tennessee provides no support for the notion that the Price's Case belongs in this MDL.

[6] The Panel is of course well versed in ferreting out cases where the proposed transfer will not serve the ends of justice because of the dissimilarity between the matters involved. *See e.g. In re Aredia & Zometa Products Liab. Litig.*, 429 F. Supp. 2d 1371, 1372 (J.P.M.L. 2006)(carefully considering the allegations in a range of pharmaceutical products cases and finding that transfer was not warranted for a set of those cases as "[m]ovants have failed to persuade us that any common questions of fact between the actions against Novartis and the actions against the other defendants are sufficiently numerous to justify Section 1407 transfer of the latter group. Alternatives to transfer exist that can minimize whatever possibilities there might be of duplicative discovery and/or inconsistent pretrial rulings."); *In re: Auction Rate Sec. (ARS) Mktg. Litig.*, MDL 1979, 2008 WL 4539245, *1 (Oct. 9, 2008)("the actions involve different representations made to each purchaser of ARS, which will necessarily vary from institution to institution (and perhaps from ARS to ARS). The proponents of centralization have failed to convince us that any common questions of fact among these actions are sufficiently complex and/or numerous to justify Section 1407 transfer at this time.").

To that point, the entire context of the cases consolidated into this MDL is completely different from that of the Price's Case. As the Panel is aware, the cases in the MDL are massive disputes, some between literally dozens of repair shops on the plaintiff side and a nearly equal number of insurance companies on the defense side. The fundamental allegation in the cases in the MDL is that State Farm – in conspiracy with other insurance companies – convinces repair shops to enter into DRP relationships and then leverages that membership to extract concessions from the repair shops in a manner that violates federal and state law. If the repair shops do not fall in line in the course of their DRP memberships, the complaints allege, then State Farm – in conspiracy with other insurance companies – will punish the repair shops, including by "steering" customers to more compliant shops within the DRP network.

So while Progressive strains to find a connection between the cases by saying that both the Price's Case and the MDL cases have allegations of steering, the allegations of steering arise from completely different sources. In the MDL, the allegations arise from an allegedly concerted effort, led by State Farm, to punish participants in DRPs for non-compliance; in the Price's Case, the allegations arise from an effort, directed solely by Progressive, to steer customers away from PCC, *who is not a member of Progressive's DRP*, because Progressive thinks PCC charges too much money and because Progressive has institutional animus toward PCC. The phrase "apples and oranges" was coined for precisely this type of situation.

The first prong of the Section 1407 test strongly weighs against transfer.

**B. The Convenience Factor Does Not Favor Transfer**

It naturally follows from the absence of commonality between the Price's Case and those in the MDL that transfer for consolidated pretrial proceedings would not be particularly convenient for the parties and witnesses. 28 U.S.C. § 1407(a). Indeed, it is hard to detect any

benefits to judicial economy flowing from transfer of the Price's Case, and Progressive's briefing provides no illumination on that issue.

In arguing that the "convenience factor" of the Section 1407 test favors transfer, Progressive claims that "consolidation will prevent duplication of discovery in multiple actions." (Progressive Memo. at 5.) Again, Progressive is simply incorrect and displays a misunderstanding of what has actually happened in the Price's Case to date.

Following the filing of the Motion to Compel in the Price's Case, Progressive produced "corporate physical damage standards," "training materials," "sourcebooks" and other similar materials. Both sides have traded documents related to the claims of specific insured and claimants. The Parties have also traded some historic emails. At this point in the proceeding, the discovery in the Price's Case is narrowly focused on a few specific issues regarding production of additional Progressive e-mails and Face Sheet Notes. These issues continue to be carefully considered by Magistrate Judge Griffin, who is certain to fairly and reasonably resolve the issue of the precise e-mails and Face Sheet Notes Progressive needs to produce. And, *again these e-mails and Face Sheet Notes will only be those that reference or mention PCC*, which given the lack of commonality between the cases, are extremely unlikely to be otherwise the subject of discovery in the MDL. In sum, there are not many categories of documents left to produce in the Price's Case and those documents would not be the subject of discovery in the MDL anyway. Transfer would not save any resources as far as document production is concerned.

As for depositions, PCC anticipates calling those Progressive witnesses who have knowledge of how Progressive treated PCC, which is, again, a distinct issue from any raised in the MDL. It is telling that Progressive cannot point to a single specific witness who would be burdened by the Panel declining to add this case to the MDL. It simply is not the case that the

11

discovery in which Progressive is being compelled to engage in the Price's Case will overlap in any meaningful way with the reasonably anticipated discovery in the MDL. The convenience factor clearly militates against transfer.

### C. Transfer Would Not Serve The Interests of Justice or Efficiency

As for the final prong of the Section 1407 test, it is clear that the "just and efficient" path is to leave the Price's Case precisely where it is, moving forward in discovery in the Middle District of Tennessee, with the help of a Magistrate Judge who is deeply invested in the few remaining discovery issues.

And, naturally, Progressive has essentially nothing to say in support of the third prong of the Section 1407 test, only claiming in a three-sentence argument that "consolidation will prevent inconsistent rulings" in the Price's Case and *Brewer* on the tortious interference issue. (Progressive Brief at 8.) But, as explained in the note above, inconsistent rulings are not a concern because the context in which the alleged tortious interference occurred in *Brewer* – State Farm in a conspiracy with other insurance company imposing undue pressure on DRP participants – is completely different from the tortious interference already established in the Price's Case. Again, this is all apples and oranges.

In sum, the Price's Case is not in its "early stages" as Progressive would have the Panel believe. The Price's Case was filed well more than two years ago. PCC had doggedly been pursuing documents from Progressive for much of that time, and it has gained significant victories through Motion to Compel briefing and argument, while producing more than 8000 pages of documents. PCC has already obtained an Affidavit from David Edwards that all but establishes the steering in which Progressive engages. PCC's Rule 30(b)(6) witness is ready to go, waiting on Progressive to confirm a date for his deposition.

Add to all this that the Price's Case is factually inapposite from the cases in the MDL, and it is clear that the interest of justice compels that the Price's Case continue unimpeded in the Middle District of Tennessee.

## **CONCLUSION**

For the reasons stated herein, PCC respectfully requests that the Panel affirm the previous conclusion of the MDL Clerk finding the Price's Case inappropriate for this MDL and deny Progressive's Motion to Transfer.

Dated: October 23, 2014

> Respectfully submitted,
>
> **NEAL & HARWELL, PLC**
>
> By:   /s/ William T. Ramsey_____
>         William T. Ramsey, No. 9245
> 150 Fourth Avenue North, Suite 2000
> Nashville, Tennessee 37219
> Phone:  (615) 244-1713
> Fax:  (615) 726-0573
> wramsey@nealharwell.com
>
> *Attorney for Price's Collision Center*